Shockley versus the Commissioner. Ms. Johnson. May it please the Court, Jenny Johnson on behalf of the Shockleys. After the former shareholders of SCC sold their stock, the purchaser took steps to merge and convert SCC into Shockley Communications Acquisition LLC. SCA LLC then sold its television stations but SCA LLC was the Federal Communications Commission licensee and SCA LLC was responsible for maintaining control over the programming on those stations. If a DJ had used vulgar language on the air during the summer of 2001, the FCC would have imposed fines or other penalties against SCA LLC. If the FCC had instead sued the Shockleys, asserting that the stock shale should be disregarded under the substance of reform doctrine and the facts should be recast to pretend that the DJ actually swore on the air while SCC still owned the stations, the FCC would have been laughed out of court. What the IRS is doing here is no different. In both cases, the event that triggered a liability happened after the former shareholders sold their stock. Although the hypothetical FCC case against the former shareholders wouldn't survive a motion to dismiss, the Commissioner has gotten traction here by asserting his right to use the substance of reform doctrine to determine the tax consequences of a transaction. Well, the tax court relied on the Seventh Circuit's decision in Fellman versus the Commissioner to interpret the substance over form doctrine of Wisconsin in line with federal precedent. Why shouldn't we just defer to the Seventh Circuit's interpretation of this sort of transaction to look to the substance of the transaction rather than the form to impose transferee liability? There are a number of reasons. First, the Seventh Circuit's decision is contrary to the Commissioner versus Stern because the Supreme Court in Commissioner versus Stern specifically pointed out that the fallacy in the government's argument that this is actually a tax case is that Congress didn't impose a tax liability on the Shockleys or on the other former shareholders or the transferees. So this isn't a tax case and you don't use the federal tax substance over form doctrines to decide it. The Supreme Court in Commissioner versus Stern was very clear that any rights afforded the Commissioner in this case must be equally available to any other creditor under state law. And what the court in Feldman did was use substance over form principles from federal tax cases, impute those to the state court by relying on a few state tax court cases, and in the process of doing so upend all sorts of state law property rights, respect for and other doctrines that are a very important part of state law. If the federal courts want to stray into that thicket of whether or not you can use substance over form to find each and every element of the Uniform Fraudulent Transfers Act, I would respectfully suggest that one of those courts should actually certify the question to a state Supreme Court, which hasn't happened yet. In Feldman, you can either read the case narrowly to apply to the facts in that case, where actually substance over form wasn't required, because there was an indirect transfer of the corporation's assets to the shareholders via the attorney's trust account. So you can find a transfer without having to call in any of these substance over form doctrines. And you can find the claim, because the claim happened when the company sold its assets and triggered a tax liability before the shareholders sold their stock. Doesn't seem odd, doesn't it, that both of these transactions took place over a three-hour period? They sold the stock to integrated capital and then integrated capital sold the assets and all this took place and they were out of money and there was no money left for taxes in a span of three hours? It's not that there was no money left for taxes. There was actually plenty of As I understand it, the bank provided the money to pay to the Shockleys. And the entity then paid the loan off to the bank before the government could get its hands on the money. By the time the government woke up, the money was gone and and there was nothing there to pay And anyone here who evaded taxes improperly? There is, it's just not the Shockleys. Ms. Johnson, let me tell you how I see this and maybe you can respond. I'm going to use, assuming that SCC is one shareholder, and that's Shockley. And so Shockley's got these two, SCC's got these two businesses and if it sells them, SCC's going to pay ordinary income tax? Profit, is that not the case? If a C-corporation sells its assets, it will pay tax on the gains. If SCC sold the radio and television, what's the tax consequence? The company as a C-corp would pay tax on those gains and the assets. Then what would be left for Shockley as the sole shareholder would pay another tax. Yes, and that tax would actually be substantially less than what the shareholders did pay. But there would be two taxes. Yes. So, what happens is Shockley sells the stock to X. Now, let's say X is a corporation. X buys the stock and it borrows, for say $100,000, it borrows the money from the bank. And then it sells these same entities. And with the cash that it got from, it pays the bank back with the proceeds of the sale. So now there's nothing left, no money to pay taxes to the government for the asset sale, right? That's not exactly what happened here, but go ahead and I'll try to explain. No, no, in my hypothetical. Okay, in your hypothetical. In my hypothetical, the assets get sold in their same tax consequence, but no money to pay. There may or may not be the same tax consequence. And when the bank made the loan, I don't know whether the banker knows that when the loan is paid, Uncle Sam's going to be left holding the bag or not. But that's what, at the end of the day, the transaction. At the end of the day, the bank, not the Shockleys, received the money that was paid in exchange for the assets. And the bank got the money from the sale of the assets. It got paid back. Right. So the bank may very well be a transferee. There was a tax due for the sale of the assets, but there was no money to pay the tax. And that's the heart of these mid-co cases, as the government calls them. It's perfectly legitimate to sell stock. Let's suppose there was evidence that this was all arranged in order to avoid that tax payment. Okay, if we suppose that there was evidence that it was all arranged. Let's suppose that everybody got together and made that arrangement. And everybody knows that the government is, in effect, going to be defrauded out of its tax revenue. Then you fall within the series of cases that has found that you can collapse. Is that okay under the law? Hypothetical. Is that okay? You can collapse those transactions because the alleged transferee is new. Is that okay, or does the taxpayer have to pay the shareholder, Shockley? Shockley still would not have to pay because Shockley sold stock in a company that had all of its operating assets intact. Even if Shockley knew that this would be the result, it doesn't matter? That's a more complicated question. Or intended result, let's put it that way. That's a more complicated question that the tax court didn't decide because the tax court specifically decided that it didn't matter if Shockley was acting in good faith and had no knowledge that there would be an unpaid tax liability. One of the things that a lot of courts are missing in these cases is that if the company who had purchased the shares actually had tax attributes that eliminated the gains and there wasn't a tax liability, no one would possibly say that the Shockley stock sale was a problem in any way. The first thing that came to my mind was if there was intent all the way around, there might have been a conspiracy between Shockley, the buyer of the stock, and the bank. All three.  No, I understand. Is there constructive knowledge, given the facts of this case, that that wasn't the result going to be from this series of transactions? The Shockleys did not have constructive knowledge that that would be the result. They knew that the assets were going to be sold, but they didn't know that the tax liabilities would not be paid. Because they didn't know that the tax liabilities would be the same for an LLC with whatever tax attributes the purchaser had as they were for Shockley Communications, the C Corporation. There's no evidence at all that the Shockleys knew that there would be a tax liability that would go unpaid. The Shockleys know that they were paying – somebody paid a fee. Did the Shockleys pay the fee? Did somebody pay a fee to the buyer? There's a dispute in the record about whether there's any sort of fee. There's certainly a profit earned by the stock purchaser in the process of purchasing and reselling the assets. They sold the assets for more than they paid for the stock. They get a profit. My understanding of the substance of form doctrine that's been applied by the courts is that the Shockleys don't have to know that the assets are going to be sold when they sold the stock. All the court needs to look at is the substance of the transaction over the form, regardless of whether they knew. That's my understanding. Is my interpretation of our precedent incorrect? Yes, it is. What case it says the court has to factor in the fact that they knew this was going to take place? What case are you relying on? Well, there are a number of cases specific to these types of transactions. I told that, which would be Starnes v. Commissioner in the Fourth Circuit and Frank Sawyer Trust v. Commissioner in the First Circuit, interpreting the Massachusetts Uniform Fraudulent Transfers Act and the North Carolina Uniform Fraudulent Transfers Act. Because you have to remember what we're doing here is interpreting the state Uniform Fraudulent Transfers Act. We're not deciding the federal tax consequences of a transaction, which is where you use substance over form and the economic substance doctrine and whatever other doctrines that the federal courts have come up with to evaluate the tax consequences of a transaction to a taxpayer. Here, as the Supreme Court explained in Commissioner v. Stern, the Shockleys don't owe any tax liability of their own. They've paid their tax liability. This is whether you're going to hold them liable for someone else's tax liability. You said that the buyer paid more, sold the assets for more than it paid Shockleys for the stock? Far more. And then it had more money than it needed to pay the bank? It did, over $30 million more money. More than it paid the bank. Then why wasn't that money, that extra money, subject to levy by the government? Well, it certainly was, and that's why we've argued that the tax court's insolvency argument really turns every understanding of the balance sheet test upside down and on its head, because there was money sitting there ready to pay. There was money in the entity that sold the assets to Uncle Sam? Yes. Okay. There was. It looks like I'm in my rebuttal time. Yes, you have. You've saved it. Thank you. Mr. Catterall. May it please the Court. I'm Arthur Catterall of the Justice Department on behalf of the Commissioner. The tax court correctly upheld the IRS's transferee liability claims against the taxpayers, in this case, under substance over form principles. Now, in their opening brief, the taxpayers argued that substance over form principles have no application in determining transferee status under the Wisconsin UFTA. And in response, we pointed out, among other things, that the Seventh Circuit has held otherwise in Feldman v. Commissioner. So the taxpayers take a slightly different tack in their reply brief. This time they're arguing that substance over form principles have no application. I have a misunderstanding of the facts. I thought that the entity, in effect, that bought the shares from Shockley and borrowed the money from the bank and sold the assets, paid off the bank and didn't have enough money to pay Uncle Sam on the tax due on the sale of the assets. Correct. Did not. Am I? Paid off the bank and they didn't have enough money to pay off. But she said there was plenty of money left. I disagree, and we've explained this in our brief. I thought that that was the whole thing, was that the entity that sold the assets, after paying the bank, there was nothing left. Exactly. Because not only are they paying Rabobank, they're paying whoever that lender was. I can't remember the name of the lender. That's what I mean. $45 million. There's not enough money to pay everybody off. There's just not. Now, again, in the reply brief, the taxpayers argue that substance over form principles have no application in determining transferee status under federal tax law for purposes of determining if somebody is a transferee under Section 6901. In particular, they note that none of the three substance over form cases that we cited on page 61 of our brief involve transferee liability. That's true, but we didn't focus on this threshold issue of whether substance over form principles apply to the federal transferee determinations, because the taxpayers did not seem to question that proposition in their opening brief. So I would just add here that the Seventh Circuit in Feldman certainly applied substance over form principles in upholding the federal transferee determination. Feldman is a little different in one respect in that in Feldman the assets were sold first. Yes, absolutely. Why didn't that make a difference? Well, I would say this. Those types of cases where the assets are sold first and then you just have a corporation with basically cash and a tax liability and the mid-code company swoops in and buys the cash, I would, yes, those are more egregious cases and they're easier. So have we ever seen a case where there's been a re-characterization of the transaction to assess transferee liability when the stock was sold and then the assets? Yes, and that's the Diebold case in the Second Circuit. That's the exact scenario was there. What has the Wisconsin Supreme Court said about this and this Badger case and the ultimate authority on the state law? So what do they tell us in that case to do? You know, I mean, obviously they have not addressed this specific issue, whether you can apply. I mean, I don't know that a Wisconsin court has ever applied substance over form principles in this specific context in order to find a fraudulent transfer. Does it suggest that the Supreme Court of Wisconsin holds to the idea that the statute provides an objective test and that the intent and knowledge is not irrelevant to the inquiry? That intent and knowledge are not relevant to the inquiry? Yes, certainly. So how would that fold into this particular case? Well, we don't argue that we need to show intent or knowledge in order to re-characterize these transactions. It's just the objective economic realities. The problem for you, though, is that the tax court failed to address it in its decision. Failed? The Shockley's intent or knowledge, right? What did the tax court say? Correct, correct. The tax court said, yes, that we didn't have to show intent or knowledge. But you actually draw the intent and knowledge from the economic reality. You can certainly draw— You assume that people know the consequences of what they're doing. You can certainly draw an inference. Well, unless they're stupid. Well, and— If it's objective, then it's a reasonable person, fully informed. And I think this court in— I mean, is that not the case, that you draw the knowledge? Sure. The facts. If it's raining outside and I walk out with an umbrella, I know it's raining. Sounds like evidence 101. Well, I mean— No, no, you're absolutely right. But it sounds like something the tax court would say in its decision, though, right? That, oh, that you could infer? Well, I mean, if you don't need to show it, you know. But I think this court's decision in—and I'm going to butcher this. I think when they're talking about intent, they're talking about other evidence of intent, aside from the transaction. This court's decision, and I'm probably not pronouncing this right, Okmulgee Fields? Yes. I think the court talked about inferring from what happened. You know, you draw an inference from what happened as to what was intended. So I would agree that, you know, if you had to— Feldman said you don't need to do that. Correct. So a decision here would go—would be Feldman plus. It would adopt the Feldman approach, but it would say also that it's drawing some inferences from the circumstances of this case. I don't think so. I mean, that would be—I think it would be dictative because we don't need to show. I mean, to the extent we had to show intent, we would certainly argue, yes, you can draw an inference from what happened. But we're saying, and we're following Feldman, is that you don't need to show. Well, that's because the law presumes intent. When the law is written that way, what a court means is we're presuming intent to the extent that's necessary. Okay. You engage in certain behavior, and it's not by accident. I would not— So you intended the result that you engaged in. Absolutely. All the court of appeals, as I recall, which have addressed this issue under the particular state laws, have found that there was a need to show actual knowledge or constructive knowledge. Isn't that right? Well, you've got Feldman, and now you've got this case, tax court in this case, and you've got another tax court case called Weintraut, which is really helpful because, I mean, it's Judge Kiecki who wrote— But I'm talking about the course of appeals to which the cases have gone. Haven't they all, in construing the particular state law under the uniform statute, found that the commissioner had to show actual knowledge or constructive knowledge? Well, I think the only court that has, without a doubt, clearly held that is the Second Circuit in Diebold. What the Fourth Circuit did in Starnes, they were trying to decide if the siphoning out of the cash three weeks later from the corporation should be collapsed with the original transaction. I mean, they didn't apply the collapsing transaction in a manner that would recharacterize the transaction into a sale of assets followed by a liquidation. And then in Frank Sawyer, the court did adopt this knowledge requirement, but they put forth a very questionable interpretation of a 1951 Massachusetts case that intimated that you had to have actual fraudulent intent to collapse transactions. So, and then I guess the, yeah, okay, the Ninth Circuit was applying New York law in the Salas Money case. So I really think the only one that directly holds that you have a knowledge requirement is the Second Circuit. So if we accept your argument and look at these other circuits' opinions, would we necessarily have to ignore the Wisconsin Supreme Court's decision in Badger State Bank versus Taylor? I don't think so at all. Isn't that inconsistent with the Circuit Court opinions? Oh, oh, I'm sorry. Okay, so what you're saying is the Badger State Bank case basically says— and not recast a stock sale as an asset sale before applying the Wisconsin law. All right, well, that was a piercing of the corporate veil type case. And there was no, you know, in order to pierce the corporate veil, you know, you've got to show that there were, they didn't observe the corporate formalities, that, you know, that they were using the corporation as a checkbook or something like that. So I think the fact that the court didn't, you know, didn't apply that type of analysis does not meet— that's not a wholesale endorsement of the notion that, you know, that substance over form just has no application whatsoever. I just don't— Well, the taxpayer suggests that the case may be certified to the Wisconsin Supreme Court. What do you think of that? I think what makes it interesting is the fact that we've got a Seventh Circuit opinion out there that has decided this issue. I don't know what the Wisconsin Supreme Court, I mean, how they would view these circumstances, you know, and the fact that they are not riding on a clean slate. You've got a Seventh Circuit opinion. Only persuasive as far as they're concerned. Well, and I think we cited some cases, Supreme Court cases that say that the courts of appeals are owed deference. We have an institutional problem. If we certify the Wisconsin Supreme Court, the implication is maybe the Seventh Circuit in anticipating the Supreme Court of Wisconsin, which is what they were doing, made a mistake. That's basically what you— Well, I mean, that's the fact of it. I see these cases as nothing but evidentiary circumstantial evidence cases. You take the economic reality of what—it's kind of like antitrust law. You take the economic reality of what people are doing and the proximity of time in which they're doing it and all those facts and circumstances and the consequences, the tax consequences of what they're doing, all of which they know, and then you draw the inferences whether or not they intended to do that at all, and you have economic self-interest involved in the whole thing. All those are circumstances. Sure. Because if you didn't take that into account, then what you have is just black-letter law, which means it doesn't matter. You can be innocent as all get out, and you're still liable, and that won't work. Right, right. Yeah, no, I agree with what you're saying. If I may get to another point in the reply brief, the taxpayers claim that in the reply brief that their case is like the 1950 Supreme Court case called U.S. v. Cumberland Public Service Company. Now, both that case and a 1945 Supreme Court case called Commissioner v. Court Holding Company involved a liquidating distribution of appreciated assets by a corporation to its shareholders, immediately followed by a sale of the distributed assets by the shareholders to a third party. And under the law at that time, that little two-step maneuver resulted in one layer of income tax instead of two. Now, the trial court in Court Holding had disregarded the form of the transaction because prior to the distribution, the sale had been fully negotiated by the corporation as a sale by the corporation. The trial court in the Cumberland case respected the form of the transaction because although a sale by the corporation had been considered, it had not been fully negotiated. And all the Supreme Court did, and this is Justice Black writing in each opinion for a unanimous court, and all he did was upheld the trial court's decision in each case on the ground that it was a permissible factual finding in light of the record and therefore couldn't be disturbed on appeal. So the Cumberland court certainly did not announce, you know, a rule of law regarding the substance versus form determination that could help the taxpayers in this case. And just one other point. In any event, the two-step transactions at issue in those earlier Supreme Court cases differ from mid-code transactions in one important respect, and that is although the shareholders in Court Holding and Cumberland may have held the distributed assets only briefly before selling them, they had always had a beneficial interest in those assets by virtue of their status as shareholders. And you don't have that in mid-code transactions. Ms. Johnson. Thank you, Your Honor. I'd like to start with Badger State Bank because there have been some questions about that. And Badger State Bank is not directly on point. We all acknowledge that. It's the only Wisconsin Supreme Court case that actually interprets the Uniform Fraudulent Transfer Act. And what they do in that case is they say there are these separate corporate entities, and we're going to respect those entities and look at the transaction that the alleged transferee had with the debtor while respecting those corporate forms. So that helps us. That helps our side of the case. It also has some language about knowledge and intent doesn't matter. And, you know, this is a creditor rights protection statute. The government argues that that helps their case. The bottom line is that the Wisconsin Supreme Court has not decided how it would address this kind of issue where there is a conflict between normal state law concepts like property rights and whether you can actually create a transfer of property rights that didn't exist by using the substance of reform doctrine. Because the Wisconsin Uniform Fraudulent Transfers Act, unlike the New York statute that was interpreted in the Diebold case, the Wisconsin statute actually contains a very specific provision saying that a transfer is not made until the debtor has acquired rights to the asset transferred. That's right in the Wisconsin UFTA. And here, if SCC is being treated as the debtor and SCC never received rights to what the Shockleys received, there cannot be a transfer as a matter of Wisconsin statutory interpretation. And before you decide to throw out Wisconsin property law rights and decide that SCC somehow did acquire rights in that cash that the Shockleys received before the assets were ever sold, I think that should really be an issue that gets decided by the Wisconsin Supreme Court. Similarly, counsel mentioned that this is not a piercing the corporate veil case. Well, it is, in essence, a piercing the corporate veil case where state law has developed doctrines over decades about when you can and cannot pierce the corporate veil. And here, you're disregarding the corporate existence of SCA LLC entirely if you find the Shockleys liable for these taxes. Because you're saying SCA LLC, who actually sold the assets, didn't, because they didn't exist and so SCC actually sold those assets. SCA didn't have the tax liability. SCA didn't actually own and operate those radio stations for four months. We're going to ignore everything about that existence in order to treat SCC as if it sold its assets and triggered a tax liability. But we're not going to apply state law related to piercing the corporate veil or the much more exacting standards that apply to piercing the corporate veil under state law. We're just going to throw that out with the substance over form doctrine. I would suggest that if you're unwilling to decide this case in favor of the Shockleys on one of the many arguments that doesn't force you to dive into the thicket of state law, uniform, fraudulent transfers act, that you should, at a minimum, certify these questions to the Wisconsin Supreme Court. The commissioner agrees that no Wisconsin court has addressed substance over form in the UFTA. There's no case on point from any state court interpreting UFTA. The federal courts that have tried to apply it are divided. You've got Feldman on the one hand and the other circuits on the other hand, where Feldman is saying you don't need any sort of knowledge intent. The other circuits say you do, but it's a little unclear if you need to know that there would be an unpaid tax liability or if you have to have an intent to hinder, delay, or defraud. You've got federal courts of appeals trying to make up what the standard is under state UFTA and nobody asking any state court. These are novel issues of state law laden with important policy choices. There's an impact on business transactions, the economy. You have shareholders of a corporation that owns all of its operating assets, can't sell their shares without being at risk of being pulled back in and liable for things that the purchaser does after they've sold their shares. You're turning business transactions on their head without ever asking a state court about how they feel about that. Moreover, this state law issue will certainly repeat itself. The other former shareholders of Shockley Communications Corporation are backed up right behind us in tax court. Their cases are stayed, waiting for you to decide this case, and one of those former transferees is the state of Wisconsin Investment Board. You've got an actual state agency who's being assessed as a transferee for this tax owed by SCC, and there's no way to distinguish their position from the position of the Shockleys in this case. So the question is, is the state of Wisconsin going to interpret their own law in a way that makes the state agency that invests the retirement assets for all of its state employees liable for all of this tax that some bank or other organization didn't pay when they should have? These issues are also unlikely to reach the state courts without certification from this court because the 6901 procedures allow the IRS to do what they did here, which is issue a notice of liability and pursue this as a tax instead of going to state court and suing in state court as a creditor. But their substantive rights under Commissioner v. Stern are exactly the same as what any other state creditor would have. I think we have your case. Thank you. You're going tomorrow, aren't you?